[No. 8240.  Department One.  February 16, 1910.]

S. A. KEENAN *et al., Respondents*, v. LAURITZEN MALT
COMPANY, *Appellant.*[1]

PRINCIPAL AND AGENT—AUTHORITY—EMPLOYMENT OF ATTORNEYS—
EVIDENCE—SUFFICIENCY.  A person prosecuted for maintaining a
place in which intoxicating liquors were kept for unlawful sale
and for selling the same without a license, was a general distribut-
ing agent of a foreign corporation which owned the goods, and
was acting within the scope of his general authority in employing
an attorney to defend him and to resist seizure and sale of the
goods, valued at several thousand dollars, where it appears that the
agent so represented to the attorneys and showed them correspond-
ence between himself and the company bearing out his statements,
that the right to sell the goods had been similarly litigated in other
states, that the agent kept the company fully advised as to the
prosecutions, wrote for instructions, and made a payment on the
account by draft on the company, which acquiesced in and ratified
the employment.

EVIDENCE — SECONDARY EVIDENCE — NOTICE TO PRODUCE LETTER—
TIME.  It is not error to admit evidence of the contents of a letter,
demanded only twelve days before the trial, on the theory that the
time was not sufficient for procuring and forwarding the letter from
Minneapolis; as the time appears ample, in the absence of proper
showing to the contrary.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered April 10, 1909, upon findings
in favor of the plaintiffs, in an action on contract, after a
trial before the court without a jury.  Affirmed.

*A. C. & R. W. Emmons* and *Fred Wayne Catlett*, for ap-
pellant.

*H. A. P. Myers*, for respondents.

GOSE, J.—This action was brought by the respondents,
suing as copartners, against the appellant, to recover com-
pensation for professional services as attorneys at law.  The
controlling question in the case is whether one Childs had

[1]Reported in 106 Pac. 1122.

authority to employ counsel in the name of, and at the expense of, the appellant. The trial court found that the respondents rendered services for the appellant at its instance and request, and entered judgment against it for the reasonable value of the services. This finding necessarily implied that Childs had such authority. It is conceded that he is the party who actually employed the respondents.

The evidence is undisputed that the appellant is a foreign corporation, having its head office at Minneapolis, in the state of Minnesota; that it manufactures for wholesale a certain drink, which it claims is nonintoxicating and can be sold without a local license; that Childs came to Tacoma for the purpose of introducing and selling this product in the state of Washington, and other Pacific Coast states; that, in at least three other states, the appellant was required to litigate in the courts the question of the nonintoxicating quality of its goods; that Childs commenced selling the goods at Tacoma; that he was twice arrested, tried, and acquitted; that the respondents were his sole attorneys in both cases in the superior court; that in the first action he was prosecuted for conducting a public nuisance, and goods worth several thousand dollars were seized for destruction in case of his conviction, and that he was prosecuted a second time for selling intoxicating liquors without a license. The evidence is convincing that, before employing the respondents, Childs stated to them that he was the representative of the appellant for the sale of its goods on the Pacific Coast, including Alaska and the Oriental trade; that the appellant's goods, to the extent of $12,000, had been seized; that the appellant had directed him to employ counsel; that he employed them to represent the appellant, and that, relying upon his representations and certain letters shown them at the time of the employment, respondents appeared and conducted the cases to a successful termination. Later the respondents rendered a bill for their services to the appellant.

Childs was charged in the first case in the justice court

with maintaining a place in which intoxicating liquors were kept for unlawful use and sale, which is a nuisance under Rem. & Bal. Code, §§ 6277-6281. This statute directs that, when a complaint is made charging a violation of its provisions, a search warrant shall be issued and the goods shall be seized and kept in the custody of the officer, to be destroyed by him if the defendant is found guilty. Childs was found guilty in the justice court where he was represented by other counsel, and was acquitted on an appeal upon a trial in the superior court. The appellant was advised of the prosecution in justice court by the attorney then representing Childs, by a letter which set forth the statute in full and which stated that it was written at the instance of Childs "its agent." The appellant answered this letter at length, cited authorities which it deemed applicable, and closed by expressing a hope that a favorable decision would soon be obtained. Copies of these letters were shown to respondents by Childs when negotiating for their employment. We think the evidence shows that the goods were shipped to Childs as a general distributing agent of the appellant, and that the latter paid the freight and storage charges. It is apparent that the appellant was the real party in interest in both cases. Not only was its business in this state dependent upon the final determination of the cases, but its goods to the extent of several thousand dollars in value would have been destroyed if a conviction had been obtained in the superior court in the first case. Childs kept them advised by letters and telegrams of the progress and result of the cases. The appellant not only knew that the respondents were employed, but it knew that the goods were seized for destruction. Its claim that the goods seized were the property of Childs is not supported by the evidence.

We have adverted to the fact that the respondents rendered a bill for their services to the appellant. The trial of the case at bar began on February 3, 1909. On January 22 preced-

ing, the respondents made a written demand upon the appellant to produce the original letters or copies thereof passing between it and Childs. One of the respondents was permitted to testify that, after their statement of account had been submitted to the ·appellant, Childs showed him a letter, not in the record, which he had received from it, which stated that it had received a second letter from the respondents, that their charge was exorbitant, and directing Childs to call upon respondents· and adjust their claim. On March 28, 1908, the day after ·the conclusion of the last of the two trials, Childs wrote the appellant that the prosecuting attorney was threatening to run "us out of the state," and stating, "Better instruct me what to do if there is another warrant sworn out." · We find no answer to this letter in the record, although the appellant was requested to attach copies of all its letters to Childs to the· deposition of its general manager. It is incredible that it would have failed ·to reply to a letter so vitally affecting its business.

The appellant· claims that the goods were sold and delivered to Childs, f. o. b. the cars at Minneapolis, but it fails to produce a copy of any letter advising him of a shipment or containing a statement of account against him. It appears from the correspondence between ‘the appellant and Childs that the latter was threatened with and expecting arrest some weeks before the arrest occurred. It is unreasonable to assume that Childs would have undertaken at his own expense to litigate the right to sell appellant's goods in the state without a license. The fact that the right to sell the goods as a nonintoxicating drink, without a license, in other states had to be established by litigation, induces the belief that ·both parties expected the same difficulty to confront them in this state, and that it was contemplated that the appellant should bear the burden of the litigation. This view is strengthened by the further fact that the attorney who appeared in‑ justice court was paid by a draft drawn by Childs on the appellant.

A careful examination of the record convinces us that Childs was the general agent for the appellant on the Pacific Coast, for the purpose of introducing and distributing its goods and establishing local agencies; and that, as such, the employment of the respondents was, upon all the facts, within the scope of his agency. Moreover, the appellant knew that the respondents had been employed in its behalf, and acquiesced in and ratified the employment. It is true the evidence is conflicting upon the question of agency, but considered in the light of all the attending circumstances, the inference we have made is both the just and the logical one. Counsel for the appellant state the familiar rule that the declarations of an agent as to his agency are not admissible to establish that fact. His declarations as to the capacity in which he was acting are, however, as we have seen, supported by competent testimony, both direct and circumstantial. It is argued that the witness should not have been permitted to testify as to the contents of the appellant's letter, in view of the fact that only twelve days had intervened between the demand for the production of the letter and the trial. The time would seem ample to procure the forwarding of a letter from Minneapolis. However, no proper showing was made as to the insufficiency of the time, nor was further time asked in which to produce the letter. The court properly admitted evidence as to its contents.

The view we have taken of the case makes the authorities cited by the appellant inapplicable. It is elementary that contracts are enforcible against the principal when made by the agent acting within the scope of his powers, and it is equally fundamental that the subsequent ratification of an act where the facts are known is equivalent to a previous authorization.

The judgment will be affirmed.

Rudkin, C. J., Chadwick, Fullerton, and Morris, JJ., concur.